**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0952-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICKY RICHARDSON, a/k/a
MARK RICHARDSON,

     Defendant-Appellant.

_____

Argued February 10, 2020 – Decided May 4, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-08-0899.

Peter Thomas Blum, Assistant Deputy Public Defender argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter Thomas Blum, of counsel and on the briefs).

Lila Bagwell Leonard, Deputy Attorney General argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lila Bagwell Leonard, of counsel and on the brief).

PER CURIAM

Defendant Ricky Richardson appeals from a judgment of conviction following his guilty plea to possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1). He challenges the trial court's denial of his motion to suppress evidence, arguing:

> THE WARRANTLESS SEARCH OF [DEFENDANT'S] BAG WAS ILLEGAL, AND THE ABANDONMENT EXCEPTION WAS INAPPLICABLE, BECAUSE THE OFFICER SAW [DEFENDANT] DROP THE BAG, BUT DID NOT QUESTION [HIM] TO DETERMINE IF HE KNOWINGLY AND VOLUNTARILY RELINQUISHED IT[.]

Rejecting defendant's contention that law enforcement officers were required to question him to determine if he knowingly and voluntarily relinquished his interest in the bag, we conclude defendant abandoned the seized item and affirm.

The trial court credited the suppression hearing testimony of the detective[1] who seized the bag containing the CDS while surveilling a two-apartment house as part of an investigation of a string of burglaries unrelated to this case. Over a three to four hour period, he observed four to five people approach the house

---

[1] We recognized in our prior decision that the trial court found the detective "was a credible witness." State v. Richardson, No. A-1866-16 (App. Div. Mar. 22, 2018) (slip op. at 3 n.2).

A-0952-18T4

and yell, throw rocks at a window or make a telephone call. Defendant—with whom the detective was familiar—then opened a second-floor window, leaned his head through the opening and talked to the people who approached. The people went "to the back door at the top of a flight of stairs. The light next to the door [turned] on, the people [entered] the residence for three to four minutes, and then [left]."

At approximately 4:00 a.m., the detective posted so he could observe the rear of the residence to ensure that no one tried to leave when other law enforcement officers executed arrest warrants for other residents suspected in the burglaries. As the detective heard the entry team breach the door and enter the residence, he heard a window above him open. A plastic bag dropped from the window and landed two to three feet from him. He looked up and saw only defendant, from the chest up, leaning out the window.

The detective retrieved the bag, opened it and found a latex glove inside of which were thirty-four decks of heroin. The detective placed the bag back on the ground and entered the building to assist the arresting officers. He eventually located defendant "in bed with another individual," ostensibly sleeping. After arresting defendant, he looked out the window of the room in which he found defendant and determined it was the same window in which he

A-0952-18T4

had seen defendant; he also saw the bag that was thrown from the window. The detective and a sergeant retrieved the bag and turned it over to another detective.

Defendant argues the trial court erred by applying precedent he contends is now overruled by our Supreme Court's holdings in State v. Johnson, 193 N.J. 528, 548-49 (2008), and State v. Carvajal, 202 N.J. 214, 225 (2010), and concluding defendant abandoned the bag when, "aware that a number of police officers were outside of the residence," he "tossed the bag with the heroin out of the window onto the ground" putting "a significant distance between himself and the bag[,]" "[i]n an attempt to prevent police from finding the heroin in the residence or on his person[.]"

Our "review of a [trial court's] factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016). Those findings should be upheld if they are supported by sufficient competent evidence in the record, State v. Minitee, 210 N.J. 307, 317 (2012), and should only be disturbed if they were "so clearly mistaken 'that the interest of justice demand intervention and correction,'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). The trial court's application of its factual findings to the law, however, is subject to plenary review. See e.g., State v. Gamble, 218 N.J. 412, 425 (2014).

A-0952-18T4

In Johnson, the Court hearkened back to its decision in State v. Alston, 88 N.J. 211 (1981), in which it "reaffirmed New Jersey's long-established rule of standing in cases involving challenges to the lawfulness of searches and seizures under the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution," 193 N.J. at 541 (citing Alston, 88 N.J. at 228), and held "under our State Constitution, a criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure 'if he has a proprietary, possessory or participatory interest in either the place searched or the property seized,'" ibid. (quoting Alston, 88 N.J. at 228). The Court "eschewed" the United States Supreme Court's replacement of the federal automatic standing rule under the Fourth Amendment with "the 'amorphous "legitimate expectations of privacy in the area searched" standard[,]'" id. at 542 (quoting Alston, 88 N.J. at 228), holding "that standard gave insufficient protection to a person's property seized by law enforcement officials," antipodal to the Fourth Amendment's parallel in our State Constitution, ibid. (citing Alston, 88 N.J. at 226).

The Johnson Court "carved out 'a narrow exception to our automatic standing rule,'" Carvajal, 202 N.J. at 223 (quoting Johnson, 193 N.J. at 549), and held "a defendant will not have standing to object to the search or seizure of

5

abandoned property," ibid. (quoting Johnson, 193 N.J. at 548-49). "For the purposes of standing, property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." Johnson, 193 N.J. at 549; see also Carvajal, 202 N.J. at 225. That polestar leads to our conclusion that the trial court correctly determined defendant abandoned the bag.

Defendant relinquished possession of the bag when he threw it from the window to the backyard shared by the residents of the two-apartment residence. No one other than defendant was seen at his bedroom window throughout the evening and, importantly, immediately after the bag was thrown. Unlike the defendant in Johnson, from whose hands the container was wrested by a police sergeant, 193 N.J. at 537, defendant freely distanced himself from the bag, obviously fearing that he would be caught, literally, holding it. He made no effort to retrieve the bag after he threw it; indeed, he obviously got into bed. It strains logic to think defendant would reclaim the bag knowing its contents subjected him to prosecution. And, unlike the bag in Johnson, no person other than the one who threw it—defendant—may have claimed a property interest in it. Id. at 550.

We reject defendant's argument that law enforcement officers are required to question a defendant about their ownership of property because, under Carvajal, "the property cannot be considered abandoned unless" a defendant "knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." 202 N.J. at 223 (quoting Johnson, 193 N.J. at 549). Neither Carvajal nor Johnson signaled a requirement that police so inquire of a person who affirmatively abandons an item. As defendant acknowledges in his merits brief, "[t]his was not some unattended bag on a train platform." Thus, Carvajal is inapposite because there, defendant denied ownership or possession of any luggage and did not have a claim ticket, requiring police to verify that the unclaimed duffel bag ultimately searched was not the property of any of the other bus passengers. Id. at 218-220. Likewise, Johnson is distinguished because, there, other household members could have claimed the duffel bag carried by the defendant, and the defendant's responses to police questioning regarding ownership of the bag were equivocal. 193 N.J. at 550.

Here, defendant's actions spoke louder than any words. Police did not have to question him to ascertain his interest in the bag of CDS or that his intent

was to voluntarily abandon the bag.  His intentions were better manifested by what he did than by anything he could have said.

Requiring police to question a defendant who discards an item under circumstances such as those presented here crosses against the grain of the

> underlying [three-fold] rationale for our automatic standing rule[.]  First, a person should not be compelled to incriminate himself by having to admit ownership of an item that he is criminally charged with possessing in order to challenge the lawfulness of a search or seizure.  In other words, a person should not have to sacrifice one constitutional right to assert another. Second, the State should not be placed in the position of taking seemingly conflicting positions, on the one hand prosecuting a defendant for possessing an item in violation of the law while on the other arguing that the defendant did not, for standing purposes, possess a privacy interest in the property seized.  Last, by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase the privacy rights of all New Jersey's citizens and encourage law enforcement officials to honor fundamental constitutional principles.

> [Id. at 543 (citations omitted).]

If questioned by police, defendant could either deny ownership or possession of the bag he was seen discarding or incriminate himself by admitting the bag was his.  We see no purpose in such questioning which certainly does not protect defendant's rights or those of any other person, considering no one

other than defendant threw the bag, was in proximity to defendant when he threw it, or was otherwise in a position to claim an interest in the bag.

In our judgment, the trial court correctly determined the State proved by a preponderance of the evidence that defendant abandoned the seized bag. See Carvajal, 202 N.J. at 223-24; Johnson, 193 N.J. at 548 n.4.

We decline to consider the State's argument that the seizure of the bag was justified under the exigent circumstances exception to the warrant requirement. As we noted in our prior decision, defendant did not raise this issue to the trial court during the first suppression motion. Richardson, slip op. at 8 n.4. Nor did the State brief or argue the issue to the trial court after we determined the plain view exception to the warrant requirement did not justify the seizure and search of the bag and remanded this matter to the trial court for its consideration of the abandonment issue. The issue is not jurisdictional in nature, nor does it implicate public interest; we will not consider it. State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0952-18T4